UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

JACOB MAY,                                )
                                          )
          Plaintiff,                      )
                                          )
v.                                        )          CASE NO.:
                                          )
APRICUS BIOSCIENCES, INC.,                )          JURY DEMAND
KLEANTHIS G. XANTHOPOLOUS, Ph.D.          )
PAUL V. MAIER, DEIRDRE V. GILLESPIE,      )
M.D., LEONARD OPPENHEIM, ESQ.,            )
RUSTY RAY and JOHN DOES 1-3,              )
                                          )
          Defendants.                     )

COMPLAINT

Comes the Plaintiff, Jacob May ("May"), by and through counsel, and sues the

Defendants, Apricus Biosciences, Inc., Kleanthis G. Xanthopolous, Ph.D., Paul V. Maier,

Deirdre V. Gillespie, M.D., Leonard Oppenheim, Esq., and Rusty Ray, and for cause would state

and show as follows:

I.
THE PARTIES

1.      The Plaintiff, Jacob May, is a citizen and resident of this judicial district for

purposes of diversity jurisdiction and was such for all times material hereto. He is a shareholder

in Apricus Biosciences, Inc. and he sustained significant losses in the publicly-traded securities

of Apricus Biosciences.

2.      The Defendant, Apricus Biosciences, Inc. ("Apricus"), is a Nevada corporation

with its principal place of business at 11975 El Camino Road, Suite 300, San Diego, California

92130 and is publicly-traded on the Nasdaq Capital Market under the ticker symbol APRI.

1

3.      That Defendant, Kleanthis G. Xanthopolous, Ph.D., is believed to be a Director of Apricus for all times material hereto and who has and did have a fiduciary duty to Apricus to act in its best interests. He is not a resident of Tennessee.

4.      That Defendant, Paul V. Maier, is believed to be a Director of Apricus for all times material hereto and who has and did have a fiduciary duty to Apricus to act in its best interests. He is not a resident of Tennessee.

5.      That Defendant, Deirdre V. Gillespie, M.D., is believed to be a Director of Apricus for all times material hereto and who has and did have a fiduciary duty to Apricus to act in its best interests. She is not a resident of Tennessee.

6.      That Defendant, Leonard Oppenheim, Esq., is believed to be a Director of Apricus for all times material hereto and who has and did have a fiduciary duty to Apricus to act in its best interests. He is not a resident of Tennessee.

7.      That Defendant, Rusty Ray, is believed to be a Director of Apricus for all times material hereto and who has and did have a fiduciary duty to Apricus to act in its best interests. He is not a resident of Tennessee.

8.      That Defendants, John Does 1-3, are unnamed individuals who participated in, had knowledge of, aided and/or facilitated the wrongful acts complained of herein.

## II.
## JUDISDICTION AND VENUE

9.      The Plaintiff avers that the claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

2

10.     The Plaintiff avers that venue is proper in this district pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)). Substantial acts in furtherance of the alleged fraud, or the effects of the fraud, have occurred in this district. In connection with the acts, transactions, and conduct alleged herein. Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications, and the facilities of a national securities exchange.

## III.
## THE FACTS

11.     That on June 20, 2012 Apricus published the following press release:

### APRICUS BIOSCIENCES TO OWN REVENUE GENERATING
### LEADING FRENCH DRUG SALES & MARKETING COMPANY

Ownership of Finesco-Scomedica will allow Apricus Bio to directly launch Vitaros® and its other products in France, Europe's second-largest drug market.

Conference Call/Webcast to be Held Wednesday, June 20, 2012 at 5:15 PM ET

SAN DIEGO, June 15, 2012 (GLOBE NEWSWIRE) -- Apricus Biosciences, Inc. ("Apricus Bio" or the "Company") (Nasdaq:APRI) (http://www.apricusbio.com) today announced that it has agreed to accept, by way of a share contribution, ownership of the shares of Finesco, the French parent and holding company of Scomedica ("Scomedica"), a leading French healthcare contract sales and marketing organization in anticipation of the approval of Apricus Bio's Vitaros® for erectile dysfunction ("ED") in Europe.

Scomedica is a private company with 80 pharmaceutical sales representatives that have successfully marketed drugs in France for global pharmaceutical companies like Novartis—with 2011 annual revenues of approximately €8 million ($10.1 million). More importantly, Apricus Bio does not intend to continue using Scomedica as solely a contract sales force, but intends to also use its French sales force as a base for the Company's commercial operations in Europe, starting with the launch of Vitaros® for ED when approved. Bringing Finesco and Scomedica

3

into the Apricus Bio family of companies will enable the Company to bring its own drugs and additional partnered drugs to the key French market to build a strong pipeline in this country.

"Scomedica's large and experienced sales team gives us the ability to launch products, including Vitaros® for ED into one of the world's top markets for pharmaceuticals," said Dr. Bassam Damaj, President and Chief Executive Officer of Apricus Bio. "Specifically for Vitaros®, we intend to market the drug ourselves starting next year in France and we currently expect that at our peak we may capture approximately 30% of the ED market in that country if the drug is approved."

According to IMS Health, the ED market in France is one of the largest in Europe, at €130 million ($163.8 million) in 2010. "This transaction allows us to develop an organization that will recognize the drug's full commercial potential in one of the largest ED markets in Europe, delivering significant added value to our shareholders," said Dr. Damaj.

Apricus will also explore registration and/or commercialization of its other products in the French market, including Granisol®, NitroMist™, Femprox™ and MycoVa®. In addition, the Company is in negotiations for additional products to sell in the French market and currently expects to market and sell at least 5 marketed products in France by 2014.

Moreover, Apricus Bio believes that its ability to sell drugs in France will make it easier for the Company to enter other European markets. "The French market is a great stepping stone for our commercial operations into all of Europe," explained Damaj.

Under the terms of the agreement, Finesco's existing shareholders will contribute to Apricus Bio 100% of the outstanding common stock of Finesco in exchange for newly issued shares of Apricus Bio common stock valued at €7 million ($8.8 million USD) at the closing, followed by additional newly issued shares worth approximately €1.8 ($2.3 million USD) in the first quarter of 2013, if Scomedica achieves certain revenue milestones during 2012. Finesco and Scomedica will become wholly-owned subsidiaries of Apricus Bio. The agreement is subject to customary closing conditions and certain termination provisions as described therein.

"Scomedica is a proven sales leader in the French healthcare market with a strong record of success in product launches and marketing campaigns," said Gérard Burger, President of Scomedica. "Our organizations are highly complementary, and we look forward to working with our new colleagues to provide best-in-class pharmaceutical marketing for Apricus Bio's deep product pipeline."

4

## About FINESCO/Scomedica

FINESCO is the French holding company of Scomedica. Scomedica is a leading French pharmaceutical sales and marketing company specializing in product positioning, product launch, marketing and sales for primary care physicians and specialists. Scomedica has been leading successful pharmaceutical sales campaigns in France for nearly 20 years and is located near Paris, France. For further information on FINESCO and Scomedica, visit http://www.finesco-medica.com.

## About Apricus Biosciences, Inc.

Apricus Bio is a San Diego-based revenue-generating pharmaceutical company, with commercial products and a broad pipeline across numerous therapeutic classes.

Revenues and growth are driven from the sales of the Company's commercial products through its Apricus Pharmaceuticals USA, Inc. and NexMed (USA), Inc. subsidiaries and through out-licensing in certain territories of its product pipeline and NexACT® technology.

> 12.     That on July 13, 2012 Apricus published the following press release:

## APRICUS BIOSCIENCES ANNOUNCES CLOSING OF FINESCO-SCOMEDICA TRANSACTION

SAN DIEGO, July 13, 2012 (GLOBE NEWSWIRE) -- Apricus Biosciences, Inc. ("Apricus Bio") (Nasdaq:APRI) (http://www.apricusbio.com) today announced the closing of its agreement to own Finesco, the French parent and holding company of Scomedica, a leading French healthcare contract sales and marketing organization, by way of a share contribution. Finesco and Scomedica will operate as wholly-owned subsidiaries of Apricus Bio

Under the terms of the agreement, Finesco's existing shareholders contributed to Apricus Bio 100% of the outstanding common stock of Finesco in exchange for 2,592,592 newly issued shares of Apricus Bio common stock valued at €7 million ($8.8 million USD) at the closing. Additional, newly issued shares worth approximately €1.8 ($2.3 million USD) are due in the first quarter of 2013 if Scomedica achieves certain revenue milestones during 2012.

"The closing of this transaction marks an important milestone for Apricus Bio and our long-term commercial strategy in Europe," said Dr. Bassam Damaj, President and Chief Executive Officer of Apricus Bio. "Beginning with our lead product, Vitaros®, we expect to explore registration

and/or commercialization of our other pipeline products, including Granisol®, NitroMist™, Femprox® and MycoVa™, in the French market, realizing each product's full commercial potential in one of the largest markets in Europe. We will also use this platform to expand our commercial operations into all of Europe, building a revenue base that, we expect, will create significant value for our shareholders over the long-term."

## About FINESCO/Scomedica

FINESCO is the French holding company of Scomedica. Scomedica is a leading French pharmaceutical sales and marketing company specializing in product positioning, product launch, marketing and sales for primary care physicians and specialists. Scomedica has been leading successful pharmaceutical sales campaigns in France for nearly twenty years and is located near Paris, France.

13.    That on March 14, 2013 Apricus published the following press release:

## APRICUS BIOSCIENCES ANNOUNCES CEASING OF FINANCING OF FRENCH SUBSIDIARIES

Company to Focus Resources on Vitaros® and Femprox®

SAN DIEGO, Mar. 14, 2013 (GLOBE NEWSWIRE) -- Apricus Biosciences, Inc. ("Apricus Bio" or the "Company") (Nasdaq:APRI) (www.apricusbio.com) today announced that it intends to cease financing its French subsidiaries, Finesco SAS, its French holding company, Scomedica SAS, its French sales company and NexMed Pharma SAS its marketing company. In line with its previously stated corporate strategy, the Company will continue to focus its resources on commercializing its lead product Vitaros® (alprostadil 0.3% topical cream), for the treatment of erectile dysfunction ("ED"), and on further developing through clinical trials it lead product candidate, Femprox® (alprostadil 0.4% topical cream), for the treatment of female sexual arousal disorder ("FSAD").

The strategic decision to cease financing its French subsidiaries follows a decrease in the unit's operating performance resulting from recently enacted pricing policies affecting drug reimbursement in France and the subsequent, related loss or interruption of certain contract sales agreements. Given these events, the Company re-assessed the fair value of the reporting unit of the French subsidiaries and as a result of that assessment, the Company recorded one-time, non-cash, impairment charges totaling approximately $8.8 million in the fourth quarter of 2012.

"After performing an in depth cost-benefit analysis and evaluating strategic options, the Board of Directors has determined that it is in the best interest of the Company and its shareholders to cease financing the Company's French subsidiaries," said Rusty Ray, Chairman of the Board of Apricus Bio. "While they were acquired in mid-2012, changes since that time in the French drug reimbursement environment strongly favoring generic pharmaceuticals have led to an unforeseen loss of contract revenue and a substantial reduction in the unit's value potential. The Board continues to believe that the greatest opportunity for shareholder value creation remains in the development and commercialization, through strategic partnerships, of the Company's primary pipeline assets, particularly Vitaros® and Femprox® for male and female sexual health. We continue to look forward to what we hope to be a successful launch of Vitaros® in Canada by Abbott in the first half of this year, as well as, an approval decision by the Referenced Member State for Vitaros® in Europe in this same time period."

14.     That on March 18, 2013 Apricus published the following press release which read in part as follows:

### APRICUS BIOSCIENCES PROVIDES CORPORATE UPDATE; FILES ANNUAL REPORT FOR QUARTER AND YEAR ENDED DECEMBER 31, 2012

Company to Host Conference Call/Webcast Today at 1:00 PM ET

SAN DIEGO, Mar. 18, 2013 (GLOBE NEWSWIRE) -- Apricus Biosciences, Inc. ("Apricus Bio" or the "Company") (Nasdaq:APRI) (www.apricusbio.com) today provided an update regarding ongoing corporate activities and announced that its Annual Report on Form 10-K for the quarter and year ended December 31, 2012 has been filed with the Securities and Exchange Commission earlier today. As previously announced, the Company will host its fourth quarter and year end 2012 financial results conference call today, March 18, 2013 at 1:00 PM ET.

Rusty Ray, Chairman of the Board of Apricus Bio stated: "The Board continues to believe that the greatest opportunity for shareholder value creation remains in the development and commercialization, through strategic partnerships, of the Company's primary pipeline assets, particularly Vitaros® and Femprox® for male and female sexual health. To realize this value, the Company's recent activity has been centered on ensuring that our resources are properly aligned with our corporate objectives. We look forward to a number of important milestones throughout 2013, including the full commercial launch of Vitaros® in Canada, regulatory

7

progress with both Vitaros® and Femprox® in key territories throughout the world, and the announcement of additional strategic partnerships."

Ceasing of funding of French Subsidiaries. In March 2013, Apricus Bio announced that, as part of its effort to focus resources on its lead assets, it intends to cease financing its French subsidiaries, Finesco SAS, Scomedica SAS and NexMed Pharma SAS. The strategic decision to cease financing its French subsidiaries follows a decrease in the unit's operating performance resulting from recently enacted pricing policies affecting drug reimbursement in France and the subsequent, related loss of certain contract sales agreements.

15. That on August 8, 2012 Defendant, Apricus Biosciences, Inc. by and through its legal counsel and directors, sought to omit certain financial statements otherwise required by Rule 3-05 of Regulation S-X ("Rule 3-05") from filing and disclosing to the SEC, its shareholders and the investing public. The Defendants stated that "the Company is unable to prepare audited financial statements for the acquired business for periods prior to May 16, 2011."

16. The Plaintiff avers that Defendants had closed on a transaction in which it acquired all of the outstanding capital stock of Finesco and thereby also acquired Scomedica as an indirect wholly-owned subsidiary. Scomedica was purchased by Finesco out of bankruptcy in France and Scomedica was Finesco's sole asset at the time. Finesco was formed for the purpose of acquiring Scomedica.

17. The Defendants acquired Finesco SAS, Scomedica SAS and NexMed Pharma SAS (formerly Portalis SARL) without having the benefit of adequately reviewing, researching or investigating the historical financials of Scomedica prior to May 16, 2011. This fact was not disclosed in any pre-acquisition SEC filings nor listed among risk factors in Apricus' August 9, 2012 10-Q filing. In fact, in Apricus' November 8, 2012 10-Q filing it stated that losses have not been significant from its French Subsidiaries. The acquisition of Portalis SARL, which was

renamed NexMed Pharma SAS, was never disclosed by Defendant, Apricus, via 8-K or 10-Q filings.

18.     The Defendants acquired Finesco by paying Finesco a number of shares of Apricus common stock with a value of €7,000,000 with additional consideration owing. The Defendants purchased an insolvent company out of bankruptcy without sufficient financial information to make an informed decision regarding the purchase. This was done at the direction of and with the approval of the directors of Defendant, Apricus Biosciences, Inc. The Defendants did not publicly disclose that Scomedica was purchased out of bankruptcy or that Finesco was formed to purchase the assets of Scomedica prior to closing on the transaction. Instead the Defendants promoted the virtues of the French subsidiaries and their positive revenue. There were no disclosures that Defendant, Apricus, would be "financing" the French subsidiaries. The French acquisition was touted as the purchase of existing revenue generating businesses in France with a long history of business success.

19.     The Plaintiffs aver that the acquisition of Finesco represented greater that 50% significance to Defendant, Apricus, based on the investment test, and Defendant, Apricus, had net revenues in its most recent fiscal year of less than $50 million. As such, Defendant, Apricus, was required to file a form 8-K and provide historical financial statements pursuant to Rule 3-05.

20.     That on August 14, 2012 the SEC denied Defendant, Apricus', request to omit the audited financial records.

21.     That on August 30, 2012 the Defendants, by and through legal counsel, amended and renewed their request to omit two years of audited financials for Finesco. The Defendants argued that Defendant, Apricus, should only have to submit one year's financials because Defendant, Apricus, completed a significant equity financing in February 2012, which resulted in

9

the addition of approximately $19 million of total assets to Defendant, Apricus', balance sheet. The Defendants argued that this made the significance of the Finesco acquisition substantially less when looking at a more current balance sheet. This additional capital rendered the acquisition of Finesco to represent 29% of Defendant, Apricus', total assets under the investment test. Again, the Defendants argued that it could not compel production of the financial records under French law and that "there is little probative value in the fiscal 2010 financial statements beyond what would be provided in the fiscal 2011 financial statements."

22.     That on March 14, 2013 Defendant, Apricus, published a press release announcing that the company intended to cease funding its French subsidiaries, Finesco SAS, Scomedica SAS and NexMed Pharma SAS (formerly Portalis SARL).

23.     That on or about March 26, 2013 the Defendants reported in Defendant, Apricus', 8-K filing with the SEC that it had sold Totect ® for a loss of $1, 300,000. This liability had not been previously disclosed.

24.     That on March 28, 2013 Defendant, Apricus, published and reported in its 8-K filing with the SEC that the Commercial Court for Versailles, France opened a bankruptcy reorganization of the French subsidiaries following a declaration of insolvency by their legal representative. The Court appointed a Trustee to oversee the bankruptcy reorganization.

25.     That on April 25, 2013 the Defendants announced the total liquidation of the French subsidiaries in a press release which remains on Defendant, Apricus', website.

26.     That on or about May 10, 2013 in its 10-Q filing with the SEC Defendant, Apricus, published and reported that it issued and delivered to PediatRx 373, 134 shares of common stock which were valued at a price of $2.68 per share in settlement of a $1.0 million

payable for terminating discussions regarding the potential merger transaction entered into in February, 2012. This liability had not been previously disclosed.

27.    That on or about May 10, 2013 the Defendants published and reported in its 8-K filing with the SEC that the French subsidiaries were being liquidated.

28.    The Plaintiff avers that the market for APRI's securities are open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, APRI's securities traded at artificially inflated prices. The Plaintiff and others have been damaged thereby.

29.    The Plaintiff avers the Defendants materially misled the investing public, thereby inflating the price of APRI's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about APRI's business, operations, and prospects as alleged herein.

30.    The Plaintiff avers that at all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and others. As described herein Defendants made or caused to be made a series of materially false and/or misleading statements about APRI's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or

11

misleading statements resulted in the Plaintiff purchasing the Company's securities at artificially inflated prices or held Apricus' securities, thus causing the damages complained of herein.

31.     The Plaintiff avers that the Defendants intentionally and collectively failed to disclose material facts regarding the acquisition of the French subsidiary, Finesco. The Plaintiff avers that the Defendants failed to disclose known risk factors regarding the French companies including, but not limited to the fact that Scomedica SAS was purchased out of bankruptcy, that the Defendants had not properly vetted the financials of Scomedica prior to the acquisition, that the current changes in the French healthcare system posed a real risk to the French subsidiaries' business models, that the pressure to promote the use of generic drugs in France had an effect on Scomedica SAS' business, that the May 5, 2012 election of Socialist Party candidate, Francois Hollande, as President created a much anticipated change in the use of generic drugs in France, and the fact that in 2011 legislation was enacted in France that reinforced control of sales forces in the pharmaceutical industry. These facts were known to the Defendants and they intentionally omitted these facts from any disclosure filed with the SEC or via any press releases.

32.     The Plaintiff avers that the Defendants had actual knowledge of the changes in the French healthcare system which had been in effect since at least 2011 with respect to the pricing and sales of pharmaceuticals and intentionally omitted these facts from any disclosures and failed to properly warn the Plaintiff and the investing public. As a result, the Plaintiff and others purchased Apricus' securities at artificially inflated prices or held Apricus' securities, thus causing the damages complained of herein.

33.     The Plaintiff avers that the Defendants had knowledge of the changes and potential changes in the French healthcare system that were promised by Socialist Presidential Candidate Francois Hollande. In May, 2012 Francois Hollande was elected President of France

12

and he began implementing his further regulation of pharmaceutical sales forces in France. President Hollande's healthcare policy was known to the Defendants prior to closing on the acquisition of the so-called French subsidiaries. The Defendants intentionally omitted these material facts from the Plaintiff and the investing public.

34.     The Plaintiff avers that he sold 1,000 shares of Apricus on February 19, 2013 and realized a loss of $3,587.59.

35.     The Plaintiff avers that he sold 555 shares of Apricus on February 19, 2013 and realized a loss of $1,988.62.

36.     The Plaintiff avers that he sold 157 shares of Apricus on February 19, 2013 and realized a loss of $557.85.

37.     The Plaintiff avers that he sold 228 shares of Apricus on February 19, 2013 and realized a loss of $1,041.12.

38.     The Plaintiff avers that he sold 701 shares of Apricus on February 19, 2013 and realized a loss of $2,504.70.

39.     The Plaintiff avers that he sold 701 shares of Apricus on February 19, 2013 and realized a loss of $2,504.70.

40.     The Plaintiff avers that he sold 5,600 shares of Apricus on February 19, 2013 and realized a loss of $19,978.76.

41.     The Plaintiff avers that he sold 2,457 shares of Apricus on February 19, 2013 and realized a loss of $8,803.46.

42.     The Plaintiff avers that he sold 200 shares of Apricus on February 19, 2013 and realized a loss of $716.01.

13

43.     The Plaintiff avers that he sold 100 shares of Apricus on February 19, 2013 and realized a loss of $357.81.

44.     The Plaintiff avers that he sold 100 shares of Apricus on February 19, 2013 and realized a loss of $357.81

45.     The Plaintiff avers that he sold 997 shares of Apricus on February 19, 2013 and realized a loss of $3,510.56.

46.     The Plaintiff avers that he sold 1,746 shares of Apricus on February 19, 2013 and realized a loss of $6,233.41.

47.     The Plaintiff avers that he sold 1,400 shares of Apricus on February 19, 2013 and realized a loss of $5,045.85.

48.     The Plaintiff avers that he sold 554 shares of Apricus on February 19, 2013 and realized a loss of $1,983.39.

49.     The Plaintiff avers that he sold 100 shares of Apricus on February 19, 2013 and realized a loss of $361.10.

50.     The Plaintiff avers that he sold 746 shares of Apricus on February 19, 2013 and realized a loss of $2,701.36.

51.     The Plaintiff avers that he sold 3,865 shares of Apricus on February 19, 2013 and realized a loss of $14,034.12.

52.     The Plaintiff avers that he sold 2,654 shares of Apricus on February 19, 2013 and realized a loss of $9,636.98.

53.     The Plaintiff avers that he sold 100 shares of Apricus on February 19, 2013 and realized a loss of $363.08.

54.     The Plaintiff avers that he sold 1,111 shares of Apricus on February 19, 2013 and realized a loss of $4,034.06.

55.     The Plaintiff avers that he sold 1,378 shares of Apricus on February 20, 2013 and realized a loss of $4,907.10.

56.     The Plaintiff avers that he sold 1,378 shares of Apricus on February 20, 2013 and realized a loss of $4,907.10.

57.     The Plaintiff avers that he sold 12,099 shares of Apricus on February 20, 2013 and realized a loss of $43,865.37.

58.     The Plaintiff avers that he sold 614 shares of Apricus on February 20, 2013 and realized a loss of $2,192.60.

59.     The Plaintiff avers that he sold 197 shares of Apricus on February 20, 2013 and realized a loss of $713.34.

60.     The Plaintiff avers that he sold 5,000 shares of Apricus on February 20, 2013 and realized a loss of $18,105.57.

61.     The Plaintiff avers that he sold 3,000 shares of Apricus on February 20, 2013 and realized a loss of $10,893.04.

62.     The Plaintiff avers that he sold 1,803 shares of Apricus on February 20, 2013 and realized a loss of $6,564.75.

63.     The Plaintiff avers that he sold 1,197 shares of Apricus on February 20, 2013 and realized a loss of $4,349.56.

64.     The Plaintiff avers that he sold 288 shares of Apricus on February 20, 2013 and realized a loss of $1,046.51.

65.     The Plaintiff avers that he sold 1,800 shares of Apricus on February 20, 2013 and realized a loss of $6,550.16.

66.     The Plaintiff avers that he sold 1,215 shares of Apricus on February 20, 2013 and realized a loss of $4,427.12.

67.     The Plaintiff avers that he sold 300 shares of Apricus on February 20, 2013 and realized a loss of $1,091.70.

68.     The Plaintiff avers that he sold 97 shares of Apricus on February 20, 2013 and realized a loss of $352.30.

69.     The Plaintiff avers that he sold 188 shares of Apricus on February 20, 2013 and realized a loss of $679.04.

70.     The Plaintiff avers that he sold 300 shares of Apricus on February 20, 2013 and realized a loss of $1,086.58.

71.     The Plaintiff avers that he sold 300 shares of Apricus on February 20, 2013 and realized a loss of $1,086.58.

72.     The Plaintiff avers that he sold 300 shares of Apricus on February 20, 2013 and realized a loss of $1,089.58.

73.     The Plaintiff avers that he sold 300 shares of Apricus on February 20, 2013 and realized a loss of $1,089.58.

74.     The Plaintiff avers that he sold 1,400 shares of Apricus on February 20, 2013 and realized a loss of $5,098.76.

75.     The Plaintiff avers that he sold 712 shares of Apricus on February 20, 2013 and realized a loss of $2,593.05.

76. The Plaintiff avers that he sold 688 shares of Apricus on February 20, 2013 and realized a loss of $2,505.71.

77. The Plaintiff avers that he sold 3,470 shares of Apricus on February 20, 2013 and realized a loss of $12,709.87.

78. The Plaintiff avers that he sold 312 shares of Apricus on February 20, 2013 and realized a loss of $1,139.43.

79. The Plaintiff avers that he sold 2,000 shares of Apricus on February 20, 2013 and realized a loss of $7,322.03.

80. The Plaintiff avers that he sold 100 shares of Apricus on February 20, 2013 and realized a loss of $366.20.

81. The Plaintiff avers that he sold 303 shares of Apricus on February 20, 2013 and realized a loss of $1,115.62.

82. The Plaintiff avers that he sold 755 shares of Apricus on February 20, 2013 and realized a loss of $2,766.59

83. The Plaintiff avers that he sold 5,000 shares of Apricus on February 21, 2013 and realized a loss of $17,784.80.

84. The Plaintiff avers that he sold 1,545 shares of Apricus on February 21, 2013 and realized a loss of $5,663.44.

85. The Plaintiff avers that he sold 47 shares of Apricus on February 21, 2013 and realized a loss of $172.09.

86. The Plaintiff avers that he sold 350 shares of Apricus on February 21, 2013 and realized a loss of $1,281.45.

Case 3:13-cv-00554   Document 1   Filed 06/07/13   Page 17 of 29 PageID #: 17

87. The Plaintiff avers that he sold 293 shares of Apricus on February 21, 2013 and realized a loss of $1,078.33.

88. The Plaintiff avers that he sold 10 shares of Apricus on February 21, 2013 and realized a loss of $36.70.

89. The Plaintiff avers that he sold 700 shares of Apricus on February 21, 2013 and realized a loss of $2,354.59.

90. The Plaintiff avers that he sold 300 shares of Apricus on February 21, 2013 and realized a loss of $1,044.78.

91. The Plaintiff avers that he sold 1,597 shares of Apricus on February 21, 2013 and realized a loss of $5,595.00.

92. The Plaintiff avers that he sold 158 shares of Apricus on February 21, 2013 and realized a loss of $558.42.

93. The Plaintiff avers that he sold 3,000 shares of Apricus on February 21, 2013 and realized a loss of $10,883.79.

94. The Plaintiff avers that he sold 642 shares of Apricus on February 21, 2013 and realized a loss of $2,288.91.

95. The Plaintiff avers that he sold 904 shares of Apricus on February 21, 2013 and realized a loss of $3,223.11

96. The Plaintiff avers that he sold 354 shares of Apricus on February 21, 2013 and realized a loss of $1,295.45.

97. The Plaintiff avers that he sold 1,100 shares of Apricus on February 21, 2013 and realized a loss of $4,076.32.

98. The Plaintiff avers that he sold 5,000 shares of Apricus on February 21, 2013 and realized a loss of $18,697.98.

99. The Plaintiff avers that he sold 1,753 shares of Apricus on February 21, 2013 and realized a loss of $6,494.53.

100. The Plaintiff avers that he sold 1,000 shares of Apricus on February 21, 2013 and realized a loss of $3,731.31.

101. The Plaintiff avers that he sold 500 shares of Apricus on February 21, 2013 and realized a loss of $1,880.64.

102. The Plaintiff avers that he sold 1,300 shares of Apricus on February 21, 2013 and realized a loss of $4,886.69.

103. The Plaintiff avers that he sold 289 shares of Apricus on February 21, 2013 and realized a loss of $1,102.23.

104. The Plaintiff avers that he sold 158 shares of Apricus on February 21, 2013 and realized a loss of $602.58.

105. The Plaintiff avers that he sold 1,000 shares of Apricus on February 21, 2013 and realized a loss of $3,799.41.

106. The Plaintiff avers that he sold 1,000 shares of Apricus on February 21, 2013 and realized a loss of $3,799.41.

107. The Plaintiff avers that he sold 2,000 shares of Apricus on February 21, 2013 and realized a loss of $7,644.83.

108. The Plaintiff avers that he sold 2,000 shares of Apricus on February 21, 2013 and realized a loss of $7,644.83.

19

109.    The Plaintiff avers that he sold 2,000 shares of Apricus on February 21, 2013 and realized a loss of $7,613.79

110.    The Plaintiff avers that he sold 553 shares of Apricus on February 21, 2013 and realized a loss of $2,119.32.

111.    The Plaintiff avers that he sold 1,289 shares of Apricus on February 21, 2013 and realized a loss of $4,893.25.

112.    The Plaintiff avers that he sold 158 shares of Apricus on February 21, 2013 and realized a loss of $601.22

113.    The Plaintiff avers that he sold 2,000 shares of Apricus on February 21, 2013 and realized a loss of $7,491.86.

114.    The Plaintiff avers that he sold 153 shares of Apricus on February 21, 2013 and realized a loss of $582.21.

115.    The Plaintiff avers that he sold 1,847 shares of Apricus on February 21, 2013 and realized a loss of $6,909.65.

116.    The Plaintiff avers that he sold 1,240 shares of Apricus on February 21, 2013 and realized a loss of $4,638.87.

117.    The Plaintiff avers that he sold 1,240 shares of Apricus on February 21, 2013 and realized a loss of $4,638.87.

118.    The Plaintiff avers that he sold 8,000 shares of Apricus on April 24, 2013 and realized a loss of $31,455.22.

119.    The Plaintiff avers that he sold 602 shares of Apricus on April 24, 2013 and realized a loss of $2,373.01

120.    The Plaintiff avers that he sold 1,311 shares of Apricus on April 24, 2013 and realized a loss of $5,195.21.

121.    The Plaintiff avers that he sold 3,189 shares of Apricus on April 24, 2013 and realized a loss of $12,477.85.

122.    The Plaintiff avers that he sold 800 shares of Apricus on April 24, 2013 and realized a loss of $3,146.23.

123.    The Plaintiff avers that he sold 1,011 shares of Apricus on April 24, 2013 and realized a loss of $3,986.25

124.    The Plaintiff avers that he sold 1,087 shares of Apricus on April 24, 2013 and realized a loss of $4,276.67. That the aforepled sales are not a comprehensive list of losses incurred by Plaintiff but listed as specific examples of the losses incurred by him.

<u>LOSS CAUSATION AND ECONOMIC LOSS</u>

125.    The Plaintiff avers that Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by him and others. The Plaintiff and others purchased and held Apricus' securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged to herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

126.    The Plaintiff avers that as alleged herein, Defendants acted with *scienter* in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance and dissemination of such statements or documents as

21

primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding the Company, his/her control over, and/or receipt and/or modification of APRI's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

127.     The Plaintiff avers that the market for APRI's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, APRI's securities traded at artificially inflated prices. On June 22, 2012 the Company's stock closed at a period high of $3.6299 per share. The Plaintiff and others purchased, held or otherwise acquired the Company's securities relying upon the integrity of the market price of APRI's securities and market information relating to the Company, and have been damaged thereby.

128.     The Plaintiff avers that during the relevant Period, the artificial inflation of APRI's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by the Plaintiff and others. As described herein, during the relevant Period, Defendants made or caused to be made a series of materially false and/or misleading statements about APRI's business, prospects, and operations. These materials and/or omissions created an unrealistically positive assessment of APRI and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affecting the value of the

22

Company's stock. Defendants' materially false and/or misleading statements during the relevant Period resulted in the Plaintiff and others purchasing the Company's securities at such artificially inflated prices, and each of them damaged as a result.

129. The Plaintiff avers that at all relevant times, the market for APRI's securities was an efficient market for the following reasons, among others:

(a) APRI stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) as a regulated issuer, APRI filed periodic public reports with the SEC and the NASDAQ;

(c) APRI regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disorders, such as communications with the financial press and other similar reporting services; and,

(d) APRI was followed by securities analysts employed by major brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

## NO SAFE HARBOR

130. The Plaintiff avers that the statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking

23

statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the Defendants had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer/director of APRI who knew that the statement was false when made.

## IV.
## FIRST CAUSE OF ACTION
## VIOLATION OF SECTION 10(b) OF
## THE EXCHANGE ACT AND RULE 10b-5
## PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS

131. The Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

132. The Plaintiff avers that during the relevant Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the relevant Period, did: (i) deceive the investing public, including Plaintiff and others, as alleged herein; and (ii) cause Plaintiff and others to purchase and/or hold APRI's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

133. The Plaintiff avers that Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a

course of businesses which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for APRI's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

134.    The Plaintiff avers that Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about APRI's financial well-being and prospects, as specified herein.

135.    The Plaintiff avers that these Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of APRI's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material and  and/or omitting to state material facts necessary in order to make the statements made about APRI and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the relevant Period.

136.    The Plaintiff avers that each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives and/or directors at the Company during the relevant Period and members of the Company's management team or had control thereof; (ii) each of these Defendants, by

virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

137.    The Plaintiff avers that Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing APRI's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the relevant Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

138.    The Plaintiff avers that as a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of APRI's securities was artificially inflated during the relevant Period. In

ignorance of the fact that market prices of the Company's securities were artificially inflated, and reasonably relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the relevant Period, the Plaintiff and others acquired APRI's securities and held securities during the relevant Period at artificially high prices and were damaged thereby.

139.    The Plaintiff avers that at the time of said misrepresentations and/or omissions, the Plaintiff and others were ignorant of their falsity, and believed them to be true. Had the Plaintiff and the others and the marketplace known the truth regarding the Company's businesses, operations, and prospects, Plaintiffs and others would not have purchased or otherwise acquired or held their APRI securities, or, if they had acquired such securities during the relevant Period, they would not have done so at the artificially inflated prices which they paid.

140.    The Plaintiff avers that by virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

141.    The Plaintiff avers that as a direct and proximate result of Defendants' wrongful conduct, the Plaintiff and the others suffered damages in connection with their respective purchases and sales of the Company's securities.

**V.**
**SECOND CAUSE OF ACTION**
**VIOLATION OF SECTION 20(a) OF THE**
**EXCHANGE ACT AGAINST THE INDIVIDUAL DEFENDANTS**

142.    The Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

27

143. The Plaintiff avers that the Individual Defendants acted as controlling persons of APRI within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

144. The Plaintiff avers that in particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

145. The Plaintiff avers that as set forth above, APRI and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, the Plaintiff and others suffered damages in connection with their purchases of the Company's securities.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff seeks the following relief:

1.    That the Plaintiff be awarded compensatory damages in an amount in excess of $1,000,000 against the Defendants, jointly and severally;

2.    That the Plaintiff be awarded treble damages against the Defendants, jointly and severally;

3.    That the Plaintiff be awarded punitive damages in an amount in excess of $1,000,000 against the Defendants, jointly and severally;

4.    That a jury of six (6) be impaneled to hear this action;

5.    That the Plaintiff be awarded attorney's fees and other costs in prosecuting this action;

6.    That the Plaintiff be awarded such other relief to which he may be entitled.

Respectfully submitted,

G. Kline Preston, IV
TBPR #17141
Kline Preston Law Group, P.C.
Belle Meade Office Park
4515 Harding Pike, Suite 107
Nashville, TN 37205
Tel: (615) 279-1619
Fax: (866) 610-9565