UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JACOB MAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:13-cv-00554 |
| v. ) | |
| ) | Judge Sharp |
| APRICUS BIOSCIENCES, INC., ) | Magistrate Judge Bryant |
| KLEANTHIS XANTHOPOLOUS, Ph.D., ) | |
| PAUL V. MAIER, ) | |
| DEIRDRE V. GILLESPIE, M.D., ) | |
| LEONARD OPPENHEIM, ESQ., ) | |
| RUST RAY, and JOHN DOES 1-3, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Defendants Apricus Biosciences, Inc.; Rusty Ray; Leonard Oppenheim, Esq.; Deidre Y. Gillespie, M.D.; Kleanthis G. Xanthopoulos, Ph.D.; and Paul V. Maier (collectively, the "Defendants") filed a Motion to Dismiss (Docket Entry No. 24), to which Plaintiff Jacob May ("Plaintiff") filed a response (Docket Entry No. 30) and Defendants filed a reply (Docket Entry No. 39). Also, pending before the Court is *Plaintiff's Motion for Leave to Amend the Complaint* (Docket Entry No. 33). On September 5, 2014, the Court heard oral argument and, for the reasons discussed herein, the Court will grant Defendants' motion and deny Plaintiff's request to amend.

## FACTUAL BACKGROUND

Plaintiff is a shareholder in Apricus Biosciences, Inc. ("Apricus").[1] Apricus is a Nevada corporation and is publicly-traded on the Nasdaq Capital Market under the ticker symbol APRI.

---

[1] Unless otherwise noted, the allegations are drawn from Plaintiff's Complaint (Docket Entry No. 1).

Apricus is a biotechnology company that develops pharmaceutical products. The Company's lead product is Viatros, a drug used to treat erectile dysfunction. Apricus has also previously marketed several other medications, including Totect, which is used to treat certain side effects associated with chemotherapy. The individuals named as defendants in this action are members of Apricus' Board of Directors.

On June 15, 2012, Apricus announced that it would acquire Finesco, a French holding company, for an upfront payment of $8.8 million of Apricus common stock and other consideration. Finesco's principal asset was Scomedica, a company that employed approximately 80 sales representatives who served as a contract sales force in France for other pharmaceutical companies, including Novartis. Apricus had planned to utilize Scomedica's sales force to market Viatros once the drug was approved for commercialization in France. On June 20, 2012, Apricus issued a press release titled, "APRICUS BIOSCIENCES TO OWN REVENUE GENERATING LEADING FRENCH DRUG SALES & MARKETING COMPANY." The press release reads as follows:

> Ownership of Finesco-Scomedica will allow Apricus Bio to directly launch Vitaros® and its other products in France, Europe's second-largest drug market.
>
> Conference Call/Webcast to be Held Wednesday, June 20, 2012 at 5:15 PM ET
>
> **SAN DIEGO, June 15, 2012 (GLOBE NEWSWIRE)** -- Apricus Biosciences, Inc. ("Apricus Bio" or the "Company") (Nasdaq:APRI) (http://www.apricusbio.com) today announced that it has agreed to accept, by way of a share contribution, ownership of the shares of Finesco, the French parent and holding company of Scomedica ("Scomedica"), a leading French healthcare contract sales and marketing organization in anticipation of the approval of Apricus Bio's Vitaros® for erectile dysfunction ("ED") in Europe.
>
> Scomedica is a private company with 80 pharmaceutical sales representatives that have successfully marketed drugs in France for global pharmaceutical companies like Novartis—with 2011 annual revenues of approximately €8 million ($10.1 million). More importantly, Apricus Bio does not intend to continue using Scomedica as solely a contract sales force, but intends to also use its French sales

force as a base for the Company's commercial operations in Europe, starting with the launch of Vitaros® for ED when approved. Bringing Finesco and Scomedica into the Apricus Bio family of companies will enable the Company to bring its own drugs and additional partnered drugs to the key French market to build a strong pipeline in this country.

"Scomedica's large and experienced sales team gives us the ability to launch products, including Vitaros® for ED into one of the world's top markets for pharmaceuticals," said Dr. Bassam Damaj, President and Chief Executive Officer of Apricus Bio. "Specifically for Vitaros®, we intend to market the drug ourselves starting next year in France and we currently expect that at our peak we may capture approximately 30% of the ED market in that country if the drug is approved."

According to IMS Health, the ED market in France is one of the largest in Europe, at €130 million ($163.8 million) in 2010. "This transaction allows us to develop an organization that will recognize the drug's full commercial potential in one of the largest ED markets in Europe, delivering significant added value to our shareholders," said Dr. Damaj.

Apricus will also explore registration and/or commercialization of its other products in the French market, including Granisol®, NitroMist™, Femprox™ and MycoVa®. In addition, the Company is in negotiations for additional products to sell in the Frenchmarket and currently expects to market and sell at least 5 marketed products in France by 2014.

Moreover, Apricus Bio believes that its ability to sell drugs in France will make it easier for the Company to enter other European markets. "The French market is a great stepping stone for our commercial operations into all of Europe," explained Damaj.

Under the terms of the agreement, Finesco's existing shareholders will contribute to Apricus Bio 100% of the outstanding common stock of Finesco in exchange for newly issued shares of Apricus Bio common stock valued at €7 million ($8.8 million USD) at the closing, followed by additional newly issued shares worth approximately €1.8 ($2.3 million USD) in the first quarter of 2013, if Scomedica achieves certain revenue milestones during 2012. Finesco and Scomedica will become wholly-owned subsidiaries of Apricus Bio. The agreement is subject to customary closing conditions and certain termination provisions as described therein.

"Scomedica is a proven sales leader in the French healthcare market with a strong record of success in product launches and marketing campaigns," said Gérard Burger, President of Scomedica. "Our organizations are highly complementary, and we look forward to working with our new colleagues to provide best-in-class pharmaceutical marketing for Apricus Bio's deep product pipeline."

**About FINESCO/Scomedica**
FINESCO is the French holding company of Scomedica. Scomedica is a leading French pharmaceutical sales and marketing company specializing in product positioning, product launch, marketing and sales for primary care physicians and specialists. Scomedica has been leading successful pharmaceutical sales campaigns in France for nearly 20 years and is located near Paris, France. For further information on FINESCO and Scomedica, visit http://www.finesco-medica.com.

**About Apricus Biosciences, Inc.**
Apricus Bio is a San Diego-based revenue-generating pharmaceutical company, with commercial products and a broad pipeline across numerous therapeutic classes.

Revenues and growth are driven from the sales of the Company's commercial products through its Apricus Pharmaceuticals USA, Inc. and NexMed (USA), Inc. subsidiaries and through out-licensing in certain territories of its product pipeline and NexACT® technology.

Also, on June 20, 2012, Randy Berholz, Executive Vice President, General Counsel and Secretary of Apricus, filed an 8-K with the Securities and Exchange Commission, which announced their entry into a material agreement to purchase Finesco. The June 20, 2012, 8-K reads as follows:

*Entry into a Material Definitive Agreement.*

On June 19, 2012, Apricus Biosciences, Inc. (the "*Company*") entered into a Stock Contribution Agreement (the "*Contribution Agreement*") by and among the Company, Finesco, a holding company incorporated in France ("*Finesco*"), Scomedica, a company incorporated in France and the wholly owned subsidiary of Finesco ("*Scomedica*") (collectively, Finesco and Scomedica shall be hereinafter referred to as the "*Target Companies*") and the shareholders of Finesco named therein (the "*Shareholders*"). Pursuant to the Contribution Agreement, the Shareholders will contribute all of the outstanding capital stock of Finesco to the Company in exchange for a number of shares of the Company's common stock calculated as follows: (i) shares valued at €7,000,000 deliverable at closing (the "*Initial Contribution Amount*") and (ii) additional shares valued at €1,818,088 deliverable only if Net Revenue (as defined in the Contribution Agreement) for Scomedica for the twelve months ended December 31, 2012 equals or exceeds €8,000,000 (the "*Additional Contribution Amount*"). The Additional Contribution Amount shares will be issuable, if at all, on or before the fifth (5th) Business Day after the issuance by Scomedica's statutory auditor of its

general report on its financial statements for the fiscal year ended December 31, 2012 (the "***Additional Contribution Payment Deadline***").

The acquisition closed on July 12, 2012. The next day, July 13, 2012, Apricus issued another press release announcing the closing of their deal with Finesco. The July 13, 2012, reads as follows:

> **SAN DIEGO, July 13, 2012 (GLOBE NEWSWIRE)** -- Apricus Biosciences, Inc. ("Apricus Bio") (Nasdaq:APRI) (http://www.apricusbio.com) today announced the closing of its agreement to own Finesco, the French parent and holding company of Scomedica, a leading French healthcare contract sales and marketing organization, by way of a share contribution. Finesco and Scomedica will operate as wholly-owned subsidiaries of Apricus Bio.
>
> Under the terms of the agreement, Finesco's existing shareholders contributed to Apricus Bio 100% of the outstanding common stock of Finesco in exchange for 2,592,592 newly issued shares of Apricus Bio common stock valued at €7 million ($8.8 million USD) at the closing. Additional, newly issued shares worth approximately €1.8 ($2.3 million USD) are due in the first quarter of 2013 if Scomedica achieves certain revenue milestones during 2012.
>
> "The closing of this transaction marks an important milestone for Apricus Bio and our long-term commercial strategy in Europe," said Dr. Bassam Damaj, President and Chief Executive Officer of Apricus Bio. "Beginning with our lead product, Vitaros®, we expect to explore registration and/or commercialization of our other pipeline products, including Granisol®, NitroMist™, Femprox® and MycoVa™, in the French market, realizing each product's full commercial potential in one of the largest markets in Europe. We will also use this platform to expand our commercial operations into all of Europe, building a revenue base that, we expect, will create significant value for our shareholders over the long-term."
>
> **About FINESCO/Scomedica**
> FINESCO is the French holding company of Scomedica. Scomedica is a leading French pharmaceutical sales and marketing company specializing in product positioning, product launch, marketing and sales for primary care physicians and specialists. Scomedica has been leading successful pharmaceutical sales campaigns in France for nearly twenty years and is located near Paris, France.

Plaintiff claims that the press releases and the SEC filing artfully and deceitfully omitted key material facts to investors, namely, that Apricus purchased the "revenue generating leading"

5

French company whose only asset, Scomedica, was purchased out of bankruptcy. Further, that this gave a false impression that it was an asset, when in fact, it was a liability, which quickly became evident. On March 14, 2013, Apricus published a press release announcing that the Company intended to cease funding its French subsidiaries, Finesco SAS, Scomedica SAS, and NexMed Pharma SAS (formerly Portalis SARL). According to Plaintiff, aAs a result of these materially false and/or misleading statements, and/or failures to disclose, securities traded at artificially inflated prices and Plaintiff and others have been damaged.

## ANALYSIS

Plaintiff brought this putative securities fraud action against Apricus Biosciences, Inc. ("Apricus") and five members of its Board of Directors. Plaintiff's allegations primarily focus on Apricus' acquisition of Finesco SAS ("Finesco"), a French company acquired in part to market Apricus' flagship pharmaceutical product, Vitaros. Defendant filed a Motion to Dismiss for failure to state a claim, contending the Complaint fails to plead the basic elements of a securities fraud claim.

**I. Standards of Review**

In considering a Motion to Dismiss of a complaint alleging fraud in violation of federal securities law, three standards of review come into play. Those standards derive from Rules 12(b)(6) and 9(c) of the Federal Rules of Civil Procedure, and from the Private Securities Litigation Reform Act of 1995 ("PSLRA").

First, under Rule 12(b)(6), "all well-pleaded material allegations of the pleadings" are accepted as true, and those allegations must "be sufficient to give notice to the defendant as to what claims are alleged, and . . . plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Township of Comstock*, 592 F.3d

718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S.Ct., 1937, 1949–50 (2009)). In determining whether a complaint sets forth a plausible claim, a court may consider not only the allegations, but "may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ley v. Visteon Corp.*, 543 F.3d 801, 805 (6th Cir. 2008) (citation omitted).

Second, Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This rule requires a plaintiff: (1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Trust Co. v. Bear Stearns*, 683 F.3d 239, 247 (6th Cir. 2012). "Although 'conditions of a person's mind may be alleged generally,' Fed. R. Civ. P. 9(b), the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation 'plausible on its face.'" *Id*. (quoting, *Iqbal*, 129 S.Ct. at 1949). (internal quotation marks omitted).

Third, and "[b]olstering this rule of specificity, the PSLRA imposes further pleading requirements." *Indiana State Dist. Council of Laborers v. Omnicare, Inc.*, 583 F.3d 935, 942–43 (6th Cir. 2009). The "complaint must 'specify each statement alleged to have been misleading,'" along with "the reason or reasons why the statement is misleading,'" and "must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id*. In short, "[a] valid claim under Section 10(b) of the Act and Rule 10b-5 'must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which

7

proximately caused the plaintiff's injury.'" *Zaluski v. United American Healthcare Corp.*, 527 F.3d 564, 571 (6th Cir. 2008) (citation omitted).

**II.     Application of Law**

Although "the court's job is not to scrutinize each allegation [of the Complaint] in isolation," it is required "to assess all the allegations holistically." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). This is particularly so with respect to "examining scienter," where a court "must decide whether all of the facts alleged, *taken collectively*, meet the PSLRA's requirements" that there be a "strong inference" of fraudulent intent, that is, the fraudulent intent is "more than merely plausible or reasonable—it [is as] cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" *Ashland, Inc. v. Oppenheimer & Co., Inc.*, 648 F.3d 461, 469 (6th Cir. 2011) (italics in original) (quoting, *Tellabs*, 551 U.S. at 314). Having undertaken that review, the Court finds that dismissal is warranted.

    *A. Material Misstatement and/or Omission*

Defendants first contend Plaintiff has failed to adequately plead the existence of any actionable material misstatement or omission. A statement is said to be "actionable" when it satisfies the first two elements of a securities fraud claim (*i.e.,* it is a misrepresentation or omission of a material fact the defendant had a duty to disclose). *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 668 (6th Cir. 2005). Where a complaint alleges fraud or misrepresentation, Federal Rule of Civil Procedure 9(b) mandates "the circumstances constituting fraud or mistake shall be stated with particularity." Additionally, the PSLRA requires plaintiffs asserting claims under § 10(b) and Rule 10b–5 to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if

8

an allegation regarding the statement or omission is made on information and belief, [to] state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

In his Opposition brief, Plaintiff claims that he filed his Complaint "primarily" because of a "disparity" between the June 15, 2012 press release announcing the planned acquisition of Finesco and more detailed SEC filings, including the July 13, 2012 filing announcing the closing of the acquisition."[2] (Docket Entry No. 30 at 2). According to Plaintiff, the website and press release "touted Finesco as a 'revenue generating leading French Drug Sales & Marketing Company,' yet failed to disclose that Finesco's sole asset, Scomedica, was: (1) purchased out of bankruptcy; and (2) purchased without reliable or accurate knowledge of the company's financial status." (*Id.*). He goes on to argue "[t]he mere titling of Apricus' 20 June 2012 press release, 'APRICUS BIOSCIENCES TO OWN REVENUE GENERATING LEADING FRENCH DRUG SALES & MARKETING COMPANY,' is enough materially false and misleading, especially given the company's status in bankruptcy." (*Id.* at 9). Plaintiff then proceeds to quote nearly five pages from his Complaint without any further argument as to the alleged misstatements.

Defendants contend "[t]he simple fact that Scomedica underwent bankruptcy in 2010 does not mean it was not a 'revenue-generating' company in 2012, and Plaintiff pleads no facts to suggest otherwise." (Docket Entry No. 39 at 4). Further, Defendants argue, "the description of a company as a 'leading' player in a particular industry segment is a classic statement of corporate optimism or puffery, which is nonactionable in this Circuit as a matter of law." (*Id.* at 5-6).

---

[2] Plaintiff's entire Opposition hinges on this argument. Although his Complaint alleged two additional theories and Defendants' motion addressed them, (one being that the Company failed to disclose a contractual termination fee of $1 million and the other being the Company failed to disclose a loss associated with the sale of its ownership rights in Totect), Plaintiff failed to mention these issues at all in his brief.

9

Because "[a] misrepresentation or an omission is material only if there is a substantial likelihood that 'a reasonable investor would have viewed the misrepresentation or omission as having significantly altered the total mix of information made available,'" "obviously unimportant," "vague," or "puffing" statements, expressions of "corporate optimism," and "obvious hyperbole" are not actionable. *In re Ford Motor Co. Securities Litigation*, 381 F.3d 563, 571 (6th Cir. 2004). Plaintiff has failed to explain how a reasonable investor would have viewed the press release as a misrepresentation. The Court finds Plaintiff has failed to adequately allege the existence of any actionable material misstatement by Defendants.

Next, Plaintiff argues Defendants omitted information for which they had a duty to disclose. First, Plaintiff alleges that Defendant concealed information relating to Scomedica's previous bankruptcy – and second, that "market information" about the French president election and healthcare policies were obscured. (Docket Entry No. 30 at 15-16). Plaintiff contends these omissions were material and subject to disclosure. In support of this contention, Plaintiff cites to *Starkman v. Marathon Oil Co*., 772 F.2d 231, 241 (6th Cir. 1985). In *Starkman*, the Sixth Circuit upheld the dismissal of a securities fraud claim and held that "the failure to disclose soft information is actionable only if it is virtually as certain as hard facts." 772 F.2d at 241. Defendant counters that the "alleged omissions are not actionable because the relevant information was publicly disclosed−and was not even required to be disclosed in the first place. (Docket Entry No. 39 at 5).

A company is not required to divulge to the public each tidbit of information it possesses "because corporations might otherwise 'face potential second-guessing in a subsequent disclosure suit,' a regime that would threaten to 'deluge investors with marginally useful information, and would damage corporations' legitimate needs to keep some information non-

public.'" *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 669 (6th Cir. 2005) (citations omitted). Thus, "[i]n order to be actionable, a misrepresentation or omission must pertain to material information that the defendant had a duty to disclose," *id*., and generally this duty does not apply to forecasts, or soft information. *Zaluski v. United American Healthcare Corp.*, 527 F.3d 564, 571 (6th Cir. 2008). The Court finds Plaintiff's allegations as to the purported omissions insufficient to state an actionable omission.

     *B. Scienter*

Defendants next argue Plaintiff has failed to adequately plead scienter in his Complaint. The term "scienter" refers to "a mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976). Under the PSLRA, securities fraud plaintiffs must "with respect to each act or omission alleged to violate [the Exchange Act], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). In the Sixth Circuit, securities fraud plaintiffs satisfy the PSLRA's heightened pleading standards if they allege facts producing a strong inference of recklessness with respect to statements of present or historical fact or actual knowledge with respect to forward-looking statements. *See Helwig v. Vencor, Inc.,* 251 F.3d 540, 552 (6th Cir. 2001). However, the scienter requirement is not satisfied by allegations of negligence or mere motive and opportunity to commit fraud. *See In re Comshare, Inc. Securities Litig.,* 183 F.3d 542, 551 (6th Cir. 1999).

The requisite mental state may be established through inference, but the PSLRA limits the range of inferences to which a plaintiff is entitled at the motion to dismiss stage. Although Rule 12(b)(6) typically requires the Court to give the plaintiff the benefit of all reasonable inferences, under the PSLRA a plaintiff is entitled only to those inferences which are both

reasonable *and* strong. *Helwig,* 251 F.3d at 553. Thus, while the inference from the allegations need not be irrefutable, "plaintiffs are entitled only to the most plausible of competing inferences." *Id.* Among the factors the Sixth Circuit has identified as relevant to the determination of whether a particular securities fraud plaintiff has met the scienter requirement are whether the plaintiff has alleged:

(1) insider trading at suspicious times or in unusual amounts;

(2) divergence between internal reports and external statements on a subject;

(3) proximity in time of a statement and later disclosure of inconsistent information;

(4) bribery by a top company official;

(5) quick settlement of an ancillary lawsuit charging fraud by the company;

(6) disregard of current factual information before making statements;

(7) disclosure of negative accounting information in a way that hides the negative implications;

(8) personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and

(9) self-interested motivation of defendants in saving their jobs and/or their salaries.

*Id.* at 548–52.

As to scienter, Plaintiff's Opposition presents two arguments in response. First, Plaintiff purports that Defendants' initial press release stating that "Finesco was a 'revenue generating leading drug sales & marketing company' indicates their intent to defraud the market through its misstatements and omissions." (Docket Entry No. 30 at 17). Under the PLSRA, it is not enough to simply state that a misstatement or omission occurred, and infer in hindsight that it was done with bad intent. *See Konkol v. Diebold, Inc.*, 590 F.3d 390, 403 (6th Cir. 2009). Rather, Plaintiff

12

must separately plead facts with particularity, showing that a defendant knew or recklessly ignored that its statements were false or misleading at the time they were made. *See id.* A thorough review of the Complaint evidences that Plaintiff has not met that burden.

Second, Plaintiff contends he has pled a strong inference of scienter because the potential acquisition of Finesco was announced on June 15, 2012, but the bankruptcy was disclosed nearly a month later on July 13, 2012. (Docket Entry No. 30 at 17). Defendants counter that "[t]he salient fact is that **Apricus openly disclosed the 2010 bankruptcy to investors** the very day the acquisition was finalized, and within weeks of the first public disclosure of a potential deal." (Docket Entry No. 39 at 9)(bold in original).

For there to be liability under the PSLRA, there must be the requisite scienter, with that being "a knowing and deliberate intent to manipulate, deceive, or defraud, and recklessness." *Ashland, Inc.,* 648 F.3d at 469. Recklessness is defined as highly unreasonable conduct which is an extreme departure from the standards of ordinary care," *PR Diamonds, Inc. v. Chandler,* 364 F.3d 671, 681 (6th Cir. 2004), and requires " 'a mental state apart from negligence and akin to conscious disregard." *Louisiana Sch. Employees' Retirement Sys. v. Ernst & Young, LLP,* 622 F.3d 471, 480 (6th Cir. 2010).

Here, Plaintiff has neglected to allege facts producing a strong inference of recklessness nor a "knowing and deliberate intent to manipulate, deceive or defraud" by Defendants. Therefore, the Court finds that Plaintiff's allegations are insufficient as a matter of law to support an inference of scienter.

*C. Causation*

Finally, Defendants argue Plaintiff has not sufficiently alleged causation. The PLSRA provides as follows:

> In any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages.

15 U.S.C. § 78u–4(b)(4). A securities fraud plaintiff may not satisfy this burden simply by alleging and proving he purchased the security at an inflated price. *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1631–34, 161 L.Ed.2d 577 (2005); *D.E. & J Ltd. P'ship v. Conaway,* 133 Fed.Appx. 994, 995 (6th Cir. 2005) (unpublished opinion). Instead, a plaintiff must "adequately allege and prove the traditional elements of causation and loss." *Dura,* 125 S.Ct. at 1633. This requires a plaintiff to allege both (1) transaction causation (*i.e.,* that but for the defendant's fraudulent statement or omission, the plaintiff would not have entered into the transaction for the purchase or sale of a security, and (2) loss causation (*i.e.,* that the subject of the fraudulent statement relied upon was the cause of the actual loss suffered)). *Suez Equity Investors, LP v. Toronto–Dominion Bank,* 250 F.3d 87, 95–96 (2d Cir. 2001); *Robbins v. Koger Props., Inc.* 116 F.3d 1441, 1447 (11th Cir.1997); *Caremark, Inc. v. Coram Healthcare Corp.,* 113 F.3d 645, 648–49 (7th Cir. 1997).

Plaintiff's theory of loss causation is set forth in paragraphs 34-129 of his Complaint. In paragraphs 34-124, Plaintiff sets forth the amount of shares he sold and the realized loss he suffered on a particular date. In paragraphs 125-129, Plaintiff alleges that Defendants' misstatements and omissions caused these losses. The Complaint neglects, however, to plead the purchase dates of Plaintiff's securities. As to the purchase dates, Plaintiff claims "that it is

immaterial because whether he purchased, held or sold as a direct result of Defendants' omissions with respect to Finesco and Scomedica is all the same." (Docket Entry No. 30 at 28).

Defendants contend "[o]f course, the date Plaintiff purchased his shares is not 'immaterial.' It is critical." (Docket Entry No. 39 at 11). Defendants continue, "[u]nless Plaintiff bought his shares after June 15, 2012–the date of the first alleged misstatement or omission–he could not possibly suffer any harm . . . because his purchase price simply could not have been inflated." (*Id.*). Further, Defendants argue, that Plaintiff's Opposition does not assert any of the sales involved stock acquired during the alleged inflationary period. (*Id.*). "[O]n that basis alone," the Complaint should be dismissed. (*Id.*).

Based on a thorough review of the Complaint as well as Plaintiff's Opposition, the Court finds Plaintiff has failed to "adequately allege and prove the traditional elements of causation and loss." *See Dura,* 125 S.Ct. at 1633. Consequently, Plaintiff has failed to state a claim for all three elements of a PLSRA claim, and as such the claims against the Company will be dismissed.

### D. Individual Defendants

Defendants contend Plaintiff has not adequately pled a claim against the Individual Defendants. Defendants assert "[b]ecause Plaintiff fails to state a primary violation by the Company and advances no independent factual theory against the Individual Defendants, his claims against the Individual Defendants as primary actors and controlling persons must fail." (Docket Entry No. 39 at 12). Moreover, Plaintiff fails to adequately plead that the Individual Defendants "exercised control over the activities relevant to the alleged conduct–here, the purported omission of certain information from press releases and other disclosures–as required to state a claim against a 'controlling person.'" (Docket Entry No. 25 at 27).

Plaintiff counters that the Complaint sufficiently alleges control liability in that the Individual Defendants were "privy to and participated in the creation, development and reporting of the Company's internal budget, plans, projections and/or reports." (Docket Entry No. 30 at 29). Further, Plaintiff claims he has "likewise alleged recklessness on the part of the Defendants' [sic] as a basis for their liability in this action."[3] (*Id*. at 30).

When a plaintiff files a securities fraud action against multiple defendants, the Complaint must allege specific claims against each defendant that satisfy Rule 9(b) and the PSLRA. *In re SCB Computer Technology, Inc. Securities Litig*., 149 F.Supp.2d 334 (W.D.Tenn. 2001) (citing *Weber v. Contempo Colours, Inc.,* 105 F.Supp.2d 769, 772 (W.D.Mich. 2000).

For the reasons previously discussed herein, the Court finds the Complaint fails to plead a required predicate violation of securities fraud by the Company as well as the Individual Defendants. As such, Plaintiff's claims against the Individual Defendants must be dismissed.

*E. Request to Amend*

In the Conclusion portion of Plaintiff's response, he requests to amend his Complaint "to include the losses he has sustained since the filing of this action." (Docket Entry No. 30 at 32). "If permitted to amend," Plaintiff continues, "[he] can bolster his claims with much more detail as to all issues raised by Defendants in their motion to dismiss." (*Id.*). Plaintiff subsequently filed a *Motion for Leave to Amend the Complaint* (Docket Entry No. 33).

The Sixth Circuit has repeatedly held that a request to amend in a response to a motion to dismiss does not constitute a motion within the meaning of Fed.R.Civ.P. 15(a), particularly where the request does not indicated the particular ground on which amendment is sought. *See,*

---

[3] In further support, Plaintiff argues the allegations he "has asserted constitute liability as a result of the group-published information doctrine." (*Id.* at 31). Even if the Court were to apply the group-published doctrine, Plaintiff has failed to plead sufficient facts regarding the Board of Directors' members. *See City of Monroe Employees Retirement Sys. v. Bridgestone Corp*., 399 F.3d 651, 690 (6th Cir. 2005).

*Louisiana Sch. Employees' Ret. Sys. v. Ernst & Young,* 622 F.3d, 471, 486 (6th Cir. 2004); *PR Diamonds, Inc. v. Chandler,* 364 F.3d 671, 699 (6th Cir. 2004). In the absence of a motion under Rule 15, the Court in its discretion may deny leave to amend because Defendants are "entitled to a review of the complaint as filed pursuant to Rule 12(b)(6)" and Plaintiffs are "not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *Begala v. PNC Bank,* 214 F.3d 776, 784 (6th Cir. 2000).

Here, Plaintiff has not pled a particular ground, wherein he seeks an amendment. Rather, his three-page brief in support of his motion simply states "a more detailed description of the Defendants [sic] misstatements and omissions . . . will narrow the scope of the issues presented in this litigation and will better make better use of judicial economy." (Docket Entry No. 34 at 2). This is not a sufficient to justify granting the motion before the Court. Accordingly, Plaintiff's request to amend will be denied.

## CONCLUSION

Having considered the matter in accordance with the applicable federal rules and the PSLRA, the Court finds that the allegations in the Complaint fail to withstand the essential elements of a securities fraud case. As such, Defendants' Motion to Dismiss (Docket Entry No. 24) will be granted, and this case will be dismissed. Furthermore, *Plaintiff's Motion for Leave to Amend the Complaint* (Docket Entry No. 33) will be denied.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE